# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CEDA MILLS, INC., | ) |
| | )  2:10-cv-599 |
| Appellant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is an appeal from the April 13, 2010 order of the Bankruptcy Court filed by Debtor/Appellant Ceda Mills, Inc. ("Ceda Mills"). Ceda Mills filed a comprehensive brief in support of its position (Document No. 4), and the appeal is ripe for decision.

Bankruptcy Rule 8013 provides that the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Bankruptcy Rule 8002 provides that notice of appeal must be filed within fourteen days "of the date of the entry of judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002(a). Rule 8002 is jurisdictional in nature, and therefore, "[t]he failure to file a timely notice of appeal [from a Bankruptcy Court order] creates a jurisdictional defect barring appellate review." *Taylor v. Taylor (In re Taylor)*, 343 Fed. Appx. 753, 755 n. 1 (3d Cir. Sept.2, 2009) (citing *Shareholders v. Sound Radio, Inc.*, 109 F.3d 873, 879 (3d Cir.1997)) (internal quotations omitted). *But see Bowles v. Russell*, 551 U.S. 205, 209-13, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007); *Eberhart v. United States*, 546 U.S. 12, 15-17, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005); *Kontrick v. Ryan*, 540 U.S. 443, 452-56, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004).

As this Court has previously held in an earlier appeal from Appellant regarding this same issue, serial attempts to obtain the same relief do not afford the movant with the protection of a

renewed time period in which to appeal. *In re Ceda Mills, Inc.*, No. 09-181, 2009 U.S. Dist. LEXIS 80787, * 12, 2009 WL 2883032 (W.D.Pa. Sept. 4, 2009). "The issue ... is whether 'the factual and legal issues surrounding the [first order] and the [second order] are roughly similar." *Taylor*, 343 Fed. Appx. at 756 (citing *Turner v. Evers*, 726 F.2d 112, 114 (3d Cir.1984)). As the Court of Appeals for the Third Circuit explained, the focus is upon the function of the motion, not its caption. *Turner*, 726 F.2d at 114.

The order from which Appellant seeks an appeal is the latest challenge in a series by Appellant to orders from the Bankruptcy Court ordering Appellant to remit to its minority shareholders their unpaid pro rata share of surplus funds realized by Appellant upon the liquidation of its assets and the settlement of litigation. While the parties are familiar with the general background of this case, a review of the general factual and procedural history of the bankruptcy proceeding itself is appropriate, given the nature of this most recent appeal and the underlying orders of the Bankruptcy Court from which Appellant repeatedly repels.

On April 2, 2004, Appellant filed a voluntary petition for Chapter 11 bankruptcy protection in U.S. Bankruptcy Court for the Western District of Pennsylvania at bankruptcy number 04-24454. At the time of the filing, Appellant's business operations had ceased because of severe weather damage to both Appellant's plant and to its machinery. Pursuant to its amended plan of reorganization, which was filed along with an amended disclosure statement on April 20, 2005, Appellant would fund its plan for reorganization through the use of insurance proceeds and from ongoing business operations. The amended plan for reorganization also noted that if Appellant was "unsuccessful in its litigation against its insurance carrier, the Plan will require liquidation of the Debtor's assets and it is unlikely that anyone except administrative

2

claimants and some secured claimants would receive payment." Appellant's amended plan of reorganization was confirmed on June 24, 2005.

In its effort to recover insurance proceeds, Appellant commenced an adversary proceeding on August 5, 2005 against Cincinnati Insurance Company (its insurance carrier), PNK United Inc., Tennis Roofing and Asphalt, Inc., and Glen Flex Roofing Systems, for, *inter alia*, property damage, business interruption, and bad faith denial of coverage. Pending the resolution of that adversary proceeding, the Bankruptcy Court granted Appellant's request and approved the sale of Appellant's real and personal property on July 19, 2006. The adversary proceeding ultimately resulted in a settlement between the parties on or about October 31, 2006. As the result of the settlement, Appellant obtained enough funds to pay all of its creditors the full amount of their allowed claims. In connection with the receipt of such funds, the Bankruptcy Court required Appellant to pay all creditors the full amount of their allowed claims. However, the settlement was placed under seal at the request of the defendants and without the objection of Appellant. As a result, apparently no notice was provided to Appellant's creditors or, more importantly to this appeal, to its minority shareholders about the receipt of funds as part of the settlement.[1]

This appeal requires a review of the sequence, nature, and timing of Appellant's various filings and the Bankruptcy Court's orders beginning with the Order filed on September 19, 2008. With that Order, the Bankruptcy Court found that various claim settlements effectuated by

---

[1] With respect to the lack of notice provided to minority shareholders, the Bankruptcy Court referenced this lack of notice in te Order filed on September 19, 2008, in which it noted that certificates of service filed by Appellant omitted the minority shareholders, and, further that the original mailing matrix filed and prepared by Appellant also omitted the minority shareholders.

Appellant with creditors were tainted with inequity, having been made by Appellant with the benefit of non-public information, namely with the knowledge of the result of the adversarial proceeding settlement. The Bankruptcy Court found that the hundreds of thousands of dollars of payments to, and for the benefit of, Appellant's principal and his relatives were unauthorized and improper because no such person had any valid claim allowed against Appellant. Further, the Bankruptcy Court found Appellant's financial reporting to that point to have been woefully inadequate and inaccurate. As such, the Bankruptcy Court ordered Appellant to provide shareholders and the Court itself with a full accounting and to further provide an opportunity for the minority shareholders to be paid their ratable share of the surplus funds recovered in light of the fact this was a liquidating Chapter 11 bankruptcy that has resulted in enough funds to pay creditors in full and to pay a sizable distribution to equity holders, coupled with the fact that Appellant had been paying its principal and his relatives without remitting any distributions to minority shareholders. The Bankruptcy Court's holding was based upon the fact that the case had become a Chapter 11 liquidation, and the determination that the minority shareholders had not been provided with meaningful notice of any of the proceedings.[2]

Instead of appealing that Order, Appellant opted to move for modification/reconsideration on September 29, 2008. In particular, Appellant lodged six challenges to the September 19, 2008 Order exclusively related to the proposed Notice to Shareholders. Notable for the purpose of the pending appeal, Appellant advanced the following two arguments:

---

[2] With respect to the lack of notice provided to minority shareholders, the Bankruptcy Court noted that certificates of service filed by Appellant omitted the minority shareholders, and, further that the original mailing matrix filed and prepared by Appellant also omitted the minority shareholders.

1.  The [Bankruptcy] Court lacks jurisdiction over the relations of a Post-Conformation Debtor corporation and its shareholders in matters unrelated to the substantial consummation of the Debtor's Plan, particularly in the absence of any controversy, case or proceeding.

2.  The Court has improperly abrogated the rights of the Debtor as to its shareholders by disregarding the provision of the Pennsylvania Business Corporation laws and in disregarding the Debtor's Corporate Bylaws and Shareholder Agreements.

These are the very same arguments presented by Appellant in the appeal *sub judice*. Further, not only are the arguments the same, the structure and rationale for the arguments, including citations to legal authority, are the same.

A hearing was conducted on October 21, 2008, to consider Appellant's motion to modify order/motion for reconsideration. On November 14, 2008, the Bankruptcy Court entered a Memorandum Opinion and Order which denied said motion. The Bankruptcy Court made a specific finding that "Ceda Mills' inaccurate and incomplete financial reporting undermines the integrity of the bankruptcy process." As originally outlined in the September 19, 2008 Order, and reiterated in greater detail in the November 14, 2008 Memorandum Opinion and Order, the purpose of the notification requirement to shareholders was the result of what the Bankruptcy Court determined to be inaccurate, incomplete, and misleading financial reporting by Appellant. Among other deficiencies, the Bankruptcy Court noted that financial reports submitted by Appellant were "illegible", "difficult to read", "virtually all of them are hand-written", they "omit a number of items that should have been reported ... for example, both [the specific amount] received as a result of the October 31, 2006 settlement and the extensive payments by Ceda Mills

to the insiders of the debtor appear to be omitted and/or under reported", and "income in the Statement of Operations is ... under reported" by a significantly large amount.

On November 25, 2008, the Bankruptcy Court granted Appellant's motion for an extension of time to December 15, 2008 to appeal the November 14, 2008 order. Once again, Appellant chose not to file an appeal, but rather filed a motion for appropriate relief under Fed.R.Civ.P. 60(b) from the November 14, 2008 Memorandum Opinion and Order, arguing that the actions it took subsequent to the November 14, 2008 Order satisfied Appellant's obligations to account to the shareholders. More particularly, Appellant averred that it had proposed and made distributions to the minority shareholders in amounts equal to the return of each shareholder's original capital investment. Appellant further averred that the minority shareholders were satisfied with receiving a return of their original investment amount, as opposed to a pro rata share. By Order of December 19, 2008, the Bankruptcy Court denied Appellant's motion for appropriate relief as without merit.

On December 29, 2008, Appellant moved for reconsideration of the December 19, 2008, order advancing substantially similar arguments as raised in its December 15, 2008 motion for appropriate relief, essentially that Appellant had complied with the original September 19, 2008, order. On December 31, 2009, the Bankruptcy Court denied Appellant's motion to reconsider the December 19, 2008 Order.

On January 9, 2009, Appellant filed a notice of appeal, styled as an appeal from the December 19, 2008, order. In effect, however, this appeal was nothing more than an appeal of the September 19, 2008 Order of the Bankruptcy Court whereby Appellant sought to avoid a full accounting to shareholders and to the Court as prescribed by the Court. After three extensions to

file its brief on appeal, Appellant has raised arguments identical to those in the September 29, 2008 motion for reconsideration, namely:

1. The Bankruptcy Court lacks jurisdiction over the relations of a post-confirmation Debtor corporation and its shareholders in matter unrelated to and following the substantial consummation of said Debtor's Plan, particularly in the absence of any controversy, case or proceeding.

2. The Bankruptcy Court has improperly abrogated the rights of the Debtor as to its shareholders by disregarding the Debtor's Corporate Bylaws and Shareholder Agreements as well as the provisions of the Pennsylvania Business Corporation laws.

Not only are these arguments the same as those raised by Appellant on September 29, 2008, they are same as those raised in this the appeal underlying the above captioned action. Appellant's appeal was dismissed as untimely on September 4, 2009.

On February 22, 2010, Appellant filed a status report with the Bankruptcy Court that included a request for that Court to accept the proffered shareholder elections from the minority shareholders indicating their election not to redeem an equity interest for any sum in excess of the return of their respective capital investments, payments which were made in December of 2008. The Bankruptcy Court declined to do so. On February 26, 2010, the Bankruptcy Court ordered the Office of the United States Trustee to investigate the election decisions of the minority shareholders and to submit a report and recommendation to the Court with respect to whether the waivers and/or disclaimers elected by the minority shareholders should be accepted. The Bankruptcy Court noted concerns regarding the Appellant's latest attempt to have the

7

minority shareholder elections accepted, more particularly, the Court noted:

> While such a decision by such electing shareholders to forego a pro rata distribution of surplus funds does not appear to make any economic sense, the Court previously ordered that the Debtor provide the shareholders with (a) full disclosure of the solvent state of this bankruptcy estate, (b) notice to each shareholders of their respective right to be paid pro rata from the surplus, and (c) provide shareholders with the opportunity to waive their right to be paid sums in excess of their initial investment.
>
> In fact, the Court first ordered the Debtor to provide the shareholders with notice and an opportunity to make an election concerning their shares back on September 19, 2008. (*See* Doc. No. 360). Since that time, the Debtor has filed numerous pleadings delaying the filing of such a report as ordered by the Court. [FN 1] This Court again ordered the Debtor to comply with its Order of September 19, 2008 requiring the filing of a Final Report and Account most recently on October 19, 2009. (*See* Doc. No. 528). A Final Report and Account was finally filed by the Debtor on November 19, 2009.
>
> FN 1: See Doc. # 362 - *Motion to Modify Order and Notices Dated September 19, 2008, or In the Alternative, Motion to reconsider Order and Notices Dated September 19, 2008*; (denied by Order and memorandum Opinion dated November 14, 2008 at Doc. #369); Doc. # 372 - *Motion for Extension of Time in Which to File Appeal of the Court's November 14, 2008 Order*; Doc. # 380 - *Motion Pursuant to F.R.Civ.P. 60(b)(5), (6) for Relief from the Court's Order of November 14, 2008 and to Deem Claims of Equity Holders Satisfied* (denied by Order dated December 19, 2008 and Doc. # 384); Doc. # 389 - *Motion to Reconsider Order Dated December 19, 2008* (denied by Order dated December 31, 2008 at Doc. #393); Doc. #398 - *Notice of Appeal from the Bankruptcy Court's Order of December 19, 2008* (dismissed by District Court at Doc. #513); Doc. #508 - *Renewed Motion for Final Decree* (denied by Order dated October 19, 2009 at Doc. #526).
>
> At the hearing on the First Report and Account on February 2, 2010, the Debtor (through counsel) provided the Court with notarized forms executed by minority shareholders Michael Siegal and Robert Bruce whereby such shareholders agreed not to redeem their shares for any sum in excess of their capital investment. At that time, the Debtor did not submit an election by minority shareholders Albert Gabriel and Rose Byers. [FN 2] Debtor requested an additional week to file the remaining elections. On February 9, 2010, the Debtor then requested until February 23, 2010 to submit the elections of Mr. Gabriel and Ms. Byers.
>
> FN 2: The Debtor alleges that it previously submitted waiver elections by Ms. Byers and Mr. Gabriel, but the Court did not find them to be binding because the Debtor

8

had not made adequate and/or accurate disclosures to the minority shareholders before such parties elected to waive their rights to a pro rata distribution.

On or about February 22, 2010, the Debtor (through counsel) filed purported elections by Mr. Gabriel requesting the same treatment as elected by Mssrs. Siegel and Bruce (i.e. electing only to be paid the amount of his capital investment and not a full pro rata amount).

As to Ms. Byers, a purported election dated February 22, 2010 was received, but was signed by Mr. Gabriel as "attorney-in-fact". A copy of a general power of attorney was also filed in favor of Mr. Gabriel, and the document appears to not necessarily be compliant with the requirements of 20 Pa. C.S.A. 5601 *et seq*. The general power of attorney is also dated February 22, 2010, and is apparently on the letterhead of attorney William M. Panella of New Castle, PA. But, the Court was previously advised by the Debtor and its counsel that Ms. Byers was represented by attorney Susan Papa.

Given these circumstances, and the fact that the Debtor's administration of ths bankruptcy case has troubled the Court as set forth more fully in the Court's prior Memorandum Opinions and Orders [FN 3] the Court requests that the Office of the U.S. Trustee [FN 4] examine the elections filed by the minority shareholders, take whatever investigation it deems appropriate, and submit a report and recommendation to the Court with respect to whether the Court should accept the waivers and/or disclaimers elected by the minority shareholders.

FN 3: See Doc. ## 369, 383, 393, 428.

FN 4: The primary role of the Office of the U.S. Trustee is to serve as the "watchdog over the bankruptcy process." See House Report No. 998, 95th Cong., 2d Sess at 88 (reprinted in 1978 U.S.C.C.A.N. at 5787, 5963, 6049); see also www.justice.gov/ust/eo/ust_org/about_ustp (DOJ website setting forth mission and purpose of the U.S. Trustee Program).

The March 10, 2010 report and recommendation filed by counsel from the Office of the U.S. Trustee recommended that three of the four minority shareholders have the opportunity to revoke/rescind their previous elections in order to have the opportunity to be paid their full ratable interest in surplus funds realized by the Appellant. Doc. No. 548. The three minority shareholders subsequently filed elections with the Bankruptcy Court (through the U.S. Trustee)

9

to receive their pro rata share.

On March 19, 2010, Appellant objected to the report and recommendation. On April 13, 2010, the Bankruptcy Court overruled the Appellant's objections and adopted the recommendation of the U.S. Trustee, and ordered Appellant to remit pro rata shares to the three minority shareholders who elected to receive them. *See* April 13, 2010, Order of Bankruptcy Court, Doc. No. 559 at Bankruptcy No. 04-24452-JAD, *also attached to Appellant's Appeal to District Court at* Doc. No. 1-3. It is this order that Appellant now appeals.

Within the April 13, 2010 order from which the current appeal is taken, the Bankruptcy Court characterized Appellant's March 19, 2010 objection to the report and recommendation as its "sixth bite at the apple". *Id.* at FN 4. To that end, the Bankruptcy Court noted:

> Specifically, the Court entered an Order dated September 19, 2008, which determined that minority shareholders are entitled to be paid a pro rata distribution of surplus proceeds. The Debtor moved for reconsideration of that order, and the Debtor's motion was denied on November 14, 2008. The Debtor then moved for reconsideration of the Court's November 14, 2008 order denying the Debtor's motion for reconsideration. That motion was denied by order dated December 19, 2008. Thereafter, the Debtor filed yet another motion for reconsideration - which the Court denied by way of order dated December 31, 2008. The Debtor then lodged an appeal, which was denied by the District Court as being untimely. The Debtor then filed its Objection, which is the subject of this Memorandum Opinion. See (Dkt. ##'s 360, 369, 384, 393, 513 and 544).

*Id*.

As noted above, in order to be timely, a notice of appeal from a Bankruptcy Court order must be filed no later than ten (10) days after the order is entered. Fed.R.Bankr.P. 8002(a). However, filing a motion to amend or alter judgment under Fed.R.Civ. P. 59 or Fed.R.Civ.P. 60 re-starts the 10-day clock: the 10-day period begins to run from the denial of the motion to amend or alter judgment. *See* Fed.R.Bank. P. 8002(b)(2). A motion for reconsideration is

10

generally treated as arising under Fed.R.Civ.P. 59 for the purpose of tolling the time limit in which a party must appeal. *Turner v. Evers*, 726 F.2d 112, 114 (3d Cir. 1984); *Kelly v. Pennsylvania Railroad Co.*, 228 F.2d 727, 730 (3d Cir. 1955); *accord American Secuirty Bank v. John Y. Hardison, Inc.*, 670 F.2d 317 (D.C.Cir. 1982).

In comparing two motions in order to determine if they are roughly similar in this context, a court focuses on the function of the motion, not its caption. *Turner*, 726 F.2d at 114. Upon review, the Court considers the appeal herein to be substantially similar to the original motion for reconsideration filed by Appellant on September 29, 2008 and denied on November 14, 2008. Appellant followed that unsuccessful effort by raising the very same two arguments in an untimely appeal to this Court on January 9, 2009. Following that dismissal, Appellant attempted, once again, to have the Bankruptcy Court accept the very same elections by the minority shareholders that the Bankruptcy Court twice refused to accept in December of 2008. Appellant has now raised the same two arguments that were unsuccessful in 2008 and untimely in 2009. All three specifically challenge the obligation to provide an accounting to the minority shareholders and to provide the opportunity to receive a pro rata share of the settlement proceeds.

For the purpose of this analysis, the Court finds that the factual and legal issues advanced in the pending appeal, the previous appeal, and in the September 29, 2008 motion for reconsideration are roughly similar. The facts have been consistent throughout this process, namely, the condition of Appellant's finances, the liquidating nature of the company, the deficient financial reporting, and Appellant's obligation to make an accounting to both the shareholders and the Bankruptcy Court in the manner prescribed by the Bankruptcy Court. Further, Appellant's filings are attempts to accomplish the same purpose, to wit, to avoid

compliance with the September 19, 2008 order to properly account for finances.

As such, the Court considers Appellant's appeal to be little more than the third attempt to argue the very same arguments previously raised by appeal in an attempt to avoid the obligation originally set forth by the Bankruptcy Court almost two years ago. There is nothing in the record to suggest that the appeal period has been revived, restored, or reset anew. Accordingly, Appellant's May 26, 2010 notice of appeal was untimely, and this Court lacks jurisdiction to consider it.

NOW THEREFORE, the Court finds that Appellant's notice of appeal filed on May 26, 2010, was untimely, and, as a result, this Court lacks jurisdiction to consider it, and Appellant's appeal is **DISMISSED**.

SO ORDERED this 8th day of September, 2010.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Elsie R. Lampl, Esquire
Email: elampl@lampllaw.com
John P. Lacher, Esquire
Email: rol@lampllaw.com
Robert O. Lampl, Esquire
Email: rol@lampllaw.com