**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CEDA MILLS, INC.,** ) | |
| **Appellant,** ) | **2:10-cv-599** |
| ) | |
| **v** ) | |
| ) | |
| **CHET DUFFY, MICHAEL SIEGEL, ROBERT** ) | |
| **BRUCE, ALBERT GABRIEL, and ROSE** ) | |
| **BYERS,** ) | |
| **Appellees.** ) | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| **CHET DUFFY,** ) | |
| **Appellant,** ) | |
| ) | |
| **v** ) | **2:10-cv-796** |
| ) | |
| **CEDA MILLS, INC., MICHAEL SIEGEL,** ) | |
| **ROBERT BRUCE, ALBERT GABRIEL,  ROSE** ) | |
| **BYERS and  THE OFFICE OF THE U.S.** ) | |
| **TRUSTEE,** ) | |
| **Appellees.** ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are two appeals from the April 13, 2010 order of the

Bankruptcy Court, one filed by Debtor/Appellant Ceda Mills, Inc. ("Ceda Mills") at civil action

number 2:10-cv-599, and the second filed by Debtor's majority shareholder, Chester ("Chet")

Duffy, at civil action number 2:10-cv-796.  Ceda Mills filed a comprehensive brief in support of

its position.  Document No. 4 at Civ.A.No. 2:10-cv-599 ("Ceda Mills Doc. No.").  Appellant

Duffy never filed a brief in support of his appeal.  *See* Docket at Civ.A.No. 2:10-cv-796 ("Duffy

Doc.").  On September 8, 2010, this Court dismissed both appeals as untimely.  Appellant Ceda

Mills and Appellant Duffy each appealed their respective dismissals to the Court of Appeals for

the Third Circuit, which vacated this Court's dismissals and remanded the appeals for

consideration on the merits.  Ceda Mills Doc. No. 10 & Duffy Doc. No 7.  The appeals are now

ripe for disposition.  Generally speaking, the Order of the Bankruptcy Court from which both

Appellants appeal was part of the bankruptcy proceeding at Case No. 04-24452-JAD, and

ordered, *inter alia*, Appellant Ceda Mills to remit to three of its minority shareholders their

respective pro rata shares of surplus funds realized in the bankruptcy proceeding following the

liquidation of the company.  Having considered the Appellants' positions with regard to the April

13, 2010 Order of the Bankruptcy Court, the Court will dismiss the appeals.

Bankruptcy Rule 8013 provides that the district court "may affirm, modify, or reverse a

bankruptcy judge's judgment, order, or decree or remand with instructions for further

proceedings." Fed. R. Bankr. P. 8013.  Bankruptcy Rule 8002 provides that notice of appeal

must be filed within fourteen days "of the date of the entry of judgment, order, or decree

appealed from." Fed. R. Bankr. P. 8002(a).  On appeal from an order of the Bankruptcy Court,

the district court must apply the clearly erroneous test to factual findings and de novo review to

questions of law.  *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir.1998); Fed. R.

Bankr.P. 8013.

Appellant Ceda Mills appeals the order of the Bankruptcy Court on the following two

grounds:

    1.    Whether the Bankruptcy Court erred in exercising jurisdiction over a Post-
          Confirmation Debtor in matters unrelated to the consummation of the
          Debtor's Plan of Reorganization?

    2.    Whether the Bankruptcy Court erred in permitting the rescission of
          agreements between the Debtor and its shareholders, which were valid and
          enforceable on their face under State Law without holding an evidentiary

hearing?

*See* Ceda Mills Doc. No. 4.  Likewise, Appellant Duffy raised the same two issues on appeal,

albeit in slightly different terms, as well as the issue of whether the Bankruptcy Court exceeded

its post confirmation jurisdiction in compelling the Debtor to engage in a dissolution

notwithstanding the provisions of a confirmed plan which contemplated that the debtor would

continue in business.  Duffy Doc. No. 1 at exh. 45; *see also*, Doc. No. 600 at Bankruptcy Case

No. 04-24452-JAD ("Bankr. Doc. No. 600").  While the parties are familiar with the general

background of this case, a review of the factual and procedural history of the bankruptcy

proceeding itself is appropriate given the nature of this most recent appeal and the underlying

orders of the Bankruptcy Court.

## Background

Appellant Ceda Mills, Inc. was a company engaged in processing metals at a plant in New

Castle, Pennsylvania.  The president of Ceda Mills, Appellant Duffy, owns an 83% equity

position in the company, while four other shareholders own the remaining 17%.  In July and

August 2003, severe storms damaged Appellant's plant and machinery, forcing the cessation of

operations.  On April 2, 2004, Appellant filed a voluntary petition for bankruptcy protection

under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court

for the Western District of Pennsylvania at case No. 04-24452.  Appellant's most significant

asset was a lawsuit, also pursued in Bankruptcy Court, against its insurance carrier for property

damage, business interruption, and bad faith denial of coverage.  Forty-one (41) creditors filed

proofs of claim against Appellant between May 3, 2005, and April 21, 2006.  The original

Disclosure Statement was filed by Appellant on November 1, 2004 contemporaneous with the

3

Chapter 11 Plan of Reorganization.  After an unsuccessful attempt at plan confirmation, Appellant filed an Amended Plan of Reorganization ("Amended Plan") and an Amended Disclosure Statement on April 20, 2005.  Among other things, the Amended Plan included the following provisions:

## Execution of the Plan

Funding for this Plan will be derived from insurance proceeds and from the ongoing business operations of the Debtor.  The Debtor believes that ongoing operations will be sufficient to fund the Debtor's Plan.  In addition, with an operational plant, the Debtor will likely be able to to obtain investments from third parties and financing which would produce additional funds to support the Debtor's Plan obligations.  If the Debtor is unsuccessful in its litigation against its insurance carrier, the Plan will require liquidation of the Debtor's assets and it is unlikely that anyone except administrative claimants and some secured claimants would receive payment.

...

## Retention of Jurisdiction

The Court will retain jurisdiction of the Chapter 11 Case for the following purposes:

a.      To determine the allowance or disallowance of claims and interest(s).

b.      To fix the allowances of compensation and other administrative expenses.

c.      To determine any and all applications, objections, adversary proceedings and contested or litigated matter properly before the Court and pending on the Effective Date.

d.      To modify the Plan or remedy any defect or omission or reconcile any inconsistency in the Order of Confirmation to the extent authorized by the Code.

e.      To enforce provisions of the Plan relating to payments and distributions to be made to the claimants.

f.      For such other matters as may be set forth in the Order of Confirmation or Post-Confirmation Order.

*See* Amended Plan, Bankr. Doc. No. 115.  By way of an order entered by the Bankruptcy Court, the Amended Disclosure Statement was conditionally approved, and a confirmation hearing was scheduled on the Amended Plan.  After a hearing on the Amended Disclosure Statement and the Amended Plan, the Bankruptcy Court confirmed Appellant's Amended Plan on June 23, 2005.  A Post-Confirmation Order was issued by the Bankruptcy Court on June 24, 2005.

A.     Insurance Litigation and Liquidation

        During this time, there were two adversary proceedings pursued by Debtor/Appellant Ceda Mills in Bankruptcy Court against its insurance carrier.  On June 28, 2004, Ceda Mills commenced an adversary proceeding against Cincinnati Insurance Company (its insurance carrier), Gilbert's Insurance Agency, Inc., and James B. Schneider, at Adversary Proceeding No. 04-2773-JAD for, *inter alia*, breach of contract, conspiracy to breach contract, and bad faith denial of coverage.  Ceda Mills commenced a second adversary proceeding on August 5, 2005 against Cincinnati Insurance Company, PNK United Inc., Tennis Roofing and Asphalt, Inc., and Glen Flex Roofing Systems, at Adversary Proceeding No. 05-2919-JAD for, *inter alia*, property damage, business interruption, and bad faith denial of coverage.  This insurance litigation was protracted and ultimately took over two years to get to trial.  While the litigation was pending, Appellant Ceda Mills lacked sufficient funds to adequately protect secured creditor interests as required by 11 U.S.C. § 361.  As a result, the liquidation alternative set forth in the Amended Plan was invoked by Ceda Mills prior to trial, and the company moved to sell substantially all of its tangible assets before the Bankruptcy Court.  *See* Bankr. Doc. No. 192.  Following a hearing on the motion to sell its real and personal property, the Bankruptcy Court granted the request of Ceda Mills and approved the sale of Debtor's property on July 19, 2006.  Bankr. Doc. No. 211.

The adversary proceedings ultimately resulted in a settlement between the parties on or about October 31, 2006.  As the result of the settlement, Appellant Ceda Mills obtained enough funds to pay all of its creditors the full amount of their allowed claims.  The amount of funds realized by Appellant Ceda Mills in this case was at least $15,106,191.42, most of which ($14,100,000.00) was derived from a confidential settlement funded by the defendant insurance carriers at Adversary Proceeding No. 04-2773-JAD.  The insurance settlement was described as confidential because, at the request of the insurance defendants and with the consent of Appellant Ceda Mills, the global settlement was approved under seal.  As the Bankruptcy Court later discovered, apparently no notice was provided to Appellant's creditors or, more importantly to this appeal, to its minority shareholders about the receipt of funds as part of the settlement.[1]

This appeal requires a review of the sequence, nature, and timing of Appellant's various filings and the Bankruptcy Court's orders since the final insurance settlement on October 31, 2006.

B.      Rule to Show Cause: Payments to Creditors

Upon final approval of the settlement, the Bankruptcy Court expected Appellant Ceda Mills to pay all creditors holding allowed claims in full at the time of the consummation of the settlement, and, to the extent claims were timely disputed, place proceeds in a reserve to fund immediate payment when the subject dispute was finalized.  The insurance settlement agreement signed by Appellant acknowledged that the proceeds of the insurance settlement were to be used

---

[1]      The Bankruptcy Court referenced this lack of notice to the minority shareholders in the Order filed on September 19, 2008, Bankr. Doc. No. 360, in which it noted that certificates of service filed by Debtor omitted said shareholders, and, further that the original mailing matrix filed and prepared by Debtor also omitted the minority shareholders.

to pay the creditor claims.  *See* Mutual Release and Settlement Agreement at p. 18 (¶

V.F.)("Ceda Mills and Duffys agree to undertake any and all actions necessary to satisfy the

bankruptcy estate and/or the claims of all creditors currently pending in the action styled *In re:*

*Ceda Mills, Inc.*, Bankruptcy No. 04-24452BM, Chapter 11 (United States District Court for the

Western District of Pennsylvania).")

Thereafter, numerous transactions came to the attention of the Bankruptcy Court that

caused concern, and the Court issued a Rule to Show Cause on June 12, 2008.  Bankr. Doc. No.

336.  The transactions in question included the fact that, following the consummation of the

insurance settlement, Appellant Ceda Mills, along with Appellant Duffy, negotiated a significant

number of creditors down from their filed claims, even though almost all of the creditor's claims

were never timely objected to and were deemed allowed as a matter of bankruptcy law.  *See*

Bankr. Doc. No. 369 at 9 - 10; *see also* Bankr. Doc. No. 336.  Apparently, following the

insurance settlement, Debtor compromised a number of allowed claims at steep discounts

(exceeding $558,000 in aggregate) in exchange for immediate payment.  *Id*. at Appendix A; *see*

*also*, Bankr. Doc. No. 345, Response of Ceda Mills to Rule, at p. 11 (Debtor "determined to

explore the possibility that creditors might be willing to compromise their claim amounts in

exchange for expedited (immediate) payment.") and at p. 16 (" ... offers for immediate payment

... in exchange for a discount in the claim amount.")

The Bankruptcy Court held hearings on the Rule on July 22, 2008, August 29, 2008, and

September 5, 2008.  On September 19, 2008, the Bankruptcy Court ordered the following:

1.    The settlements referenced in the Rule by and between the debtor and creditors
      holding allowed claims are deemed to be non-final due to the fact that Ceda Mills,
      Inc. and its principal settled such claims with non-public insider information.  That

non-public insider information is that the debtor had more than sufficient funds to pay such creditor claims in full.  The Court will therefore issue that an [sic] order and notice to creditors in the form attached hereto at Exhibit "A", which advises allowed claimants that Ceda Mills, Inc. has, and always had, sufficient funds on hand to pay allowed claims in full and provide those creditors with an opportunity to revisit their settlements in light of the true facts of this case.

Bankr. Doc. No. 360.  Appellant moved for reconsideration of this Order on September 29, 2008, Bankr. Doc. No. 362, and a hearing was held on the motion of October 21, 2008 where the Bankruptcy Court took the matter under advisement.  *See* Bankr. Doc. No. 364.  With the Memorandum Opinion and Order filed on November 14, 2008, the Bankruptcy Court provided the following determinations in this regard:

It appears to the Court that the settlements of creditor claims were obtained all while the debtor and its insider had an uneven level of information regarding the outcome of this bankruptcy case.  This is unfortunate because when the Court sealed the insurance settlement, the Court did not expect that Ceda Mills would utilize the Court's order to obtain a unilateral benefit over unknowing creditors.  Utilizing the sealed record as a sword is a sharp practice which this Court does not accept.  Not only is such conduct a sharp practice, it is also conduct that is inequitable, and is inconsistent with the duties imposed upon Ceda Mills, its counsel, and Mr. Duffy under applicable law.  *See In re Insulfoams*, [184 B.R. 694, 702 (Bankr. W.D. Pa. 1995), *aff'd* 104 F.3d 547 (3d Cir. 1997)](holding that a reorganized debtor is a fiduciary of the interests of creditors); *Virzi v. Grand Trunk Warehouse and Cold Storage Co.*, 571 F.Supp. 507, 512 (E.D. Mich. 1983)(holding that counsel's failure to disclose material facts with hopes of inducing settlement violated duty of candor and fairness imposed on members of the bar); *In re Bidermann Industries, U.S.A.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997)("actions of chief executive officer of the company are imbued with fiduciary duties as well"); *see also*, *Pepper v. Litton*, 308 U.S. 295, 311 (1939)("he who is in such a fiduciary position cannot serve himself first and his cestui second.  He cannot manipulate the affairs of his corporation to their detriment and in disregard of the standards of common decency and honesty."); *In re Allegheny Int'l, Inc.*, 134 B.R. 814, 820 (Bankr. W.D. Pa. 1991)("A fiduciary's dealings with those it represents are subject to rigorous scrutiny.  Where any of its transactions are challenged, the burden is on the fiduciary not only to prove the good faith of the challenged transaction but also to show its inherent fairness from the viewpoint of those that the fiduciary represents." (quoting *In re Mesta Mach. Co.*, 67 B.R. 151 (Bankr. W.D. Pa. 1986)).

Bankr. Doc. No. 369 at pp. 18 - 19.  While the issue regarding the claim settlements with creditors are not the subject of the two appeals pending in the matters *sub judice*, it is referenced here because it provides a degree of context to the Bankruptcy Court's dealings with the parties, and the capacity of Appellant Ceda Mills to both manipulate and inequitably exploit knowledge, or lack thereof, for the purpose of the economic benefit of the majority shareholder (and his family members) at the apparent expense of both the creditors and the minority shareholders.

C.       Rule to Show Cause: Inside Transfers to Duffy and Notice to Minority Shareholders

The Rule to Show Cause, and the proceedings that followed, were not limited to the issue of the settlement of claims held by creditors.  The Bankruptcy Court also expressed concern with what appeared to be insider transfers by majority shareholder Duffy for his own benefit and for the benefit of his relatives, and the question "of why should these insiders receive preferential treatment to the detriment of both arms-length creditors and the non-Duffy equity holders of Ceda Mills".  Bankr. Doc. No. 336.  More specifically, Appellant Ceda Mills, through majority shareholder Duffy, made hundreds of thousands of dollars of payments to Duffy and his relatives (collectively, the "transfers"), while making no distributions to the minority shareholders following the consummation of the settlement.  These transfers were made despite the fact that the record indicates that the recipients had not filed any claims against Ceda Mills, and were not identified as recipients of any distribution under the Plan of Reorganization ahead of the other shareholders.  *See, e.g.*, Claims Register at Bankr. Case No. 04-24454-JAD; *see also*, Bankr. Doc. No. 18, Petition and Schedules at Schedules D, E, and F.  The questioned transfers included $400,000.00 of payments to Duffy's wife, Michelle Duffy; a loan repayment of $2,000.00 to Duffy's son, Mike Duffy; and various "loan [payments] against Duffy home" along with

payments on account of other similar personal obligations of the Duffys which equal at least

$94,376.64.  *See* Bankr. Doc. No. 321.

Following the Show Cause hearing conducted on July 22, 2008, Appellant Ceda Mills

filed a letter with the Bankruptcy Court on August 5, 2008, with an attached proposed letter to

the equity holders purportedly updating the minority shareholders with the status of the

bankruptcy and the insurance litigation.  Bankr. Doc. No. 348.  The Show Cause hearing

continued on August 29, 2008, the Bankruptcy Court rejected Appellant Ceda Mills' proposed

letter and found it to be misleading, including a specific reference to a "net loss to date" of

$3,771,280.86, which the Bankruptcy Court found to be entirely inaccurate.  *See* Bankr. Doc. No.

359, Transcript of hearing held on August 29, 2008.  Appellant Ceda Mills presented no other

evidence at that hearing, and the Bankruptcy Court took the matter under advisement.  *Id*.

On September 19, 2008, the Bankruptcy Court ordered the following:

2.    Because Mr. Chester Duffy and his relatives have no pre-petition allowed claims and
      no allowed post-petition administrative expense claims, all payments to, or for the
      benefit of, Mr. Duffy and his relatives during the pendency of this case are therefore
      deemed to be distribution(s) on account of Mr. Duffy's equity interest in Ceda Mills.
      Under these circumstances, and given the fact that Ceda Mills, Inc. has liquidated its
      assets, the equity holders should be provided with an opportunity to be paid their
      ratable share of the surplus funds recovered in this case.

3.    Ceda Mills, Inc. is therefore ordered to account to shareholders, the Court and the
      Office of the U.S. Trustee for Ceda Mills' receipts and disbursements; and provide
      shareholders with an opportunity to redeem their equity interests.  Such accounting
      and proposed distribution shall be by way of a First Report and Account in a form
      that substantially complies with the form annexed hereto at Exhibit "B."  Said First
      Report and Account shall be typed in its entirety and shall be filed by Ceda Mills,
      Inc. within ten (10) days of the date of this Order.

4.    Shareholders are parties in interest, entitled to be served with notice of these
      proceedings.  11 U.S.C. § 1109.  The shareholders have had no meaningful notice of
      these proceedings.  As a result, the confidential nature of the insurance settlement

found at Adversary proceeding No. 04-2773-JAD is hereby relaxed to provide shareholders of Ceda Mills, Inc. complete access with the insurance settlement and the record of this case; provided however, absent an order of court providing otherwise, the shareholders of Ceda Mills, Inc. are ordered to not disclose and keep the terms and conditions of the insurance settlement confidential as provided in the settlement documents.

5.      Within ten (10) days of the date of this Order, Ceda Mills, Inc. shall update its mailing matrix to add (a) any new addresses of creditors, and (b) the addresses of all equity holders of Ceda Mills, Inc.

Bankr. Doc. No. 360.  Instead of filing its First Report and Account within ten days, Appellant

Ceda Mills moved for reconsideration of the September 19, 2008 Order.  Bankr. Doc. No. 362.

In relevant part, Appellant's motion raised the following arguments:

1.      The Bankruptcy Court lacks jurisdiction over the relations of a Post-Confirmation Debtor corporation and its shareholders in matters unrelated to the substantial consummation of the Debtor's Plan, particularly in the absence of any controversy, case or proceeding.

2.      The Bankruptcy Court has improperly abrogated the rights of the Debtor as to its shareholders by disregarding the provisions of the Pennsylvania Business Corporation laws and in disregarding the Debtor's Corporate Bylaws and Shareholder Agreements.

3.      The Court has improperly equated the Debtor's shareholders with its creditors.

4.      The Court has improperly denied the Duffys' right to be compensated for their claim against the Debtor by disallowing their pre- and post-petition claims as "not allowed" when there is no requirement that said claims be asserted in the Bankruptcy Case when their payment does not adversely impact any creditor claim.

Bankr. Doc. No. 362.  On October 21, 2008, a hearing was held on Appellant Ceda Mills'

motion, following which, the matter was taken under advisement.  *See* Bankr. Doc. No. 364.

The November 14, 2008, Memorandum Opinion and Order followed, wherein the

Bankruptcy Court addressed Appellant's arguments, and found that the hundreds of thousands of

dollars of payments to, and for the benefit of, Appellant Duffy and his relatives were

11

unauthorized and improper because none of them had any valid claim allowed against Appellant Ceda Mills.  Similar to the inequitable practices of Appellant Ceda Mills when it came to settlement of creditors' claims, these transfers caused the Bankruptcy Court concern over the integrity of the bankruptcy process.[2]  Accordingly, the Bankruptcy Court found that the transfers to Duffy and his relatives served no purpose other than to dilute the interests of the minority shareholders.  As originally outlined in the September 19, 2008 Order, and reiterated in greater detail in the November 14, 2008 Memorandum Opinion and Order, the Bankruptcy Court determined the notices to the minority shareholders that were proposed by Appellant Ceda Mills to be inaccurate, incomplete, and misleading.  Among other deficiencies, the Bankruptcy Court noted that financial reports submitted by Appellant were "illegible", "difficult to read", "virtually all of them are hand-written", they "omit a number of items that should have been reported ... for example, both [the specific amount] received as a result of the October 31, 2006 settlement and the extensive payments by Ceda Mills to the insiders of the debtor appear to be omitted and/or

---

[2]        In fact, the Bankruptcy Court noted the history of Appellant Ceda Mills' questionable reporting of expenditures long after it had ceased operations.  For example, as of June of 2008 (just prior to the Bankruptcy Court's Rule to Show Cause), Appellant had reported the payment of at least $1,151,282.56 of "operating expenses".  *See* Bankr. Doc. No. 350, Quarterly Operating report of Debtor for the Period April, May, and June, 2008.  At least $229,012.50 of these "operating expenses" are itemized as payments on account of an "auto and truck" expense, payments on account of "insider compensation" and "insurance", payments on account of "office", payments for "repairs and maintenance", payments on account of "rent and lease expense", payments on account of "salaries/commissions/fees", payments on account of "taxes" and "real estate", and payments on account of "travel and entertainment."  *Id*.  These transactions raised concern with the Bankruptcy Court because Appellant ceased operations in 2003 and sold all of its assets in 2006.  The 2008 operating report also indicated that at least $922,270.01 of the $1,151,282.56 of "operating expenses" are "Other (attach schedule)", although no schedule was attached.  Taken together, the financial reports submitted by Appellant raised more questions than answers, especially in view of the fact that the reports were "often late, incomplete, and sloppily done at best."  Bankr. Doc. No. 369 at FN 18.

under reported", and "income in the Statement of Operations is ... under reported" by a significantly large amount.  Bankr. Doc. No. 369.

On November 25, 2008, the Bankruptcy Court granted Appellant's motion for an extension of time to December 15, 2008 to appeal the November 14, 2008 order.  Bankr. Doc. No. 373.  On December 15, 2008, Appellant Ceda Mills filed a motion for appropriate relief under Fed.R.Civ.P. 60(b) from the November 14, 2008 Memorandum Opinion and Order, arguing that the actions it took subsequent to the November 14, 2008 Order satisfied Appellant's obligations to account to the shareholders.  Bankr. Doc. No. 380.  More particularly, Appellant Ceda Mills averred that it had proposed and provided notice to the minority shareholders sufficient to satisfy the Court's Order.  *Id*.  Appellant Ceda Mills further averred that the minority shareholders had chosen to receive a return of their original investment amount, as opposed to a pro rata share.  By Order of December 19, 2008, the Bankruptcy Court denied Appellant's motion for appropriate relief as without merit.  Bankr. Doc. No. 384.

On December 29, 2008, Appellant moved for reconsideration of the December 19, 2008, order advancing substantially similar arguments as raised in its December 15, 2008 motion for appropriate relief, essentially that Appellant had complied with the original September 19, 2008, order.  On December 31, 2009, the Bankruptcy Court denied Appellant Ceda Mills' motion to reconsider.  Bankr. Doc. No. 393.

On January 9, 2009, Appellant filed a notice of appeal, styled as an appeal from the December 19, 2008, order.  Appellant has raised arguments essentially identical to those in the September 29, 2008 motion for reconsideration, namely:

1.      The Bankruptcy Court lacks jurisdiction over the relations of a post-

13

confirmation Debtor corporation and its shareholders in matter unrelated to and following the substantial consummation of said Debtor's Plan, particularly in the absence of any controversy, case or proceeding.

2.    The Bankruptcy Court has improperly abrogated the rights of the Debtor as to its shareholders by disregarding the Debtor's Corporate Bylaws and Shareholder Agreements as well as the provisions of the Pennsylvania Business Corporation laws.

*See* Doc. No. 10 from CivA.No. 2:09-cv-181.  Once again, these two issues are identical to those now pending in Appellant Ceda Mills' appeal at Civ.A.No. 2:10-cv-599.  Appellant's appeal was dismissed as untimely on September 4, 2009.  *Id*. at Doc. No. 11.  Appellant Ceda Mills did not appeal that order.

On February 22, 2010, Appellant filed a status report with the Bankruptcy Court that included a request for that Court to accept the proffered shareholder elections from the minority shareholders indicating their election not to redeem an equity interest for any sum in excess of the return of their respective capital investments, payments which were made in December of 2008.  Bankr. Doc. No. 544.  The Bankruptcy Court declined to do so.  On February 26, 2010, the Bankruptcy Court ordered the Office of the United States Trustee to investigate the election decisions of the minority shareholders and to submit a report and recommendation to the Court with respect to whether the waivers and/or disclaimers elected by the minority shareholders should be accepted.  Bankr. Doc. No. 545.  The Bankruptcy Court noted concerns regarding the Appellant's latest attempt to have the minority shareholder elections accepted.  More particularly, the Court noted:

While such a decision by such electing shareholders to forego a pro rata distribution of surplus funds does not appear to make any economic sense, the Court previously ordered that the Debtor provide the shareholders with (a) full disclosure of the solvent state of this bankruptcy estate, (b) notice to each shareholders of their

14

respective right to be paid pro rata from the surplus, and (c) provide shareholders with the opportunity to waive their right to be paid sums in excess of their initial investment.

In fact, the Court first ordered the Debtor to provide the shareholders with notice and an opportunity to make an election concerning their shares back on September 19, 2008. (*See* Doc. No. 360). Since that time, the Debtor has filed numerous pleadings delaying the filing of such a report as ordered by the Court. [FN 1] This Court again ordered the Debtor to comply with its Order of September 19, 2008 requiring the filing of a Final Report and Account most recently on October 19, 2009. (*See* Doc. No. 528). A Final Report and Account was finally filed by the Debtor on November 19, 2009.

FN 1: <u>See</u> Doc. # 362 - *Motion to Modify Order and Notices Dated September 19, 2008, or In the Alternative, Motion to Reconsider Order and Notices Dated September 19, 2008*; (denied by Order and Memorandum Opinion dated November 14, 2008 at Doc. #369); Doc. # 372 - *Motion for Extension of Time in Which to File Appeal of the Court's November 14, 2008 Order*; Doc. # 380 - *Motion Pursuant to F.R.Civ.P. 60(b)(5), (6) for Relief from the Court's Order of November 14, 2008 and to Deem Claims of Equity Holders Satisfied* (denied by Order dated December 19, 2008 at Doc. # 384); Doc. # 389 - *Motion to Reconsider Order Dated December 19, 2008* (denied by Order dated December 31, 2008 at Doc. #393); Doc. #398 - *Notice of Appeal from the Bankruptcy Court's Order of December 19, 2008* (dismissed by District Court at Doc. #513); Doc. #508 - *Renewed Motion for Final Decree* (denied by Order dated October 19, 2009 at Doc. #526).

At the hearing on the First Report and Account on February 2, 2010, the Debtor (through counsel) provided the Court with notarized forms executed by minority shareholders Michael Siegal and Robert Bruce whereby such shareholders agreed not to redeem their shares for any sum in excess of their capital investment. At that time, the Debtor did not submit an election by minority shareholders Albert Gabriel and Rose Byers. [FN 2] Debtor requested an additional week to file the remaining elections. On February 9, 2010, the Debtor then requested until February 23, 2010 to submit the elections of Mr. Gabriel and Ms. Byers.

FN 2: The Debtor alleges that it previously submitted waiver elections by Ms. Byers and Mr. Gabriel, but the Court did not find them to be binding because the Debtor had not made adequate and/or accurate disclosures to the minority shareholders before such parties elected to waive their rights to a pro rata distribution.

On or about February 22, 2010, the Debtor (through counsel) filed purported elections by Mr. Gabriel requesting the same treatment as elected by Mssrs. Siegal and Bruce (i.e. electing only to be paid the amount of his capital investment and not

15

a full pro rata amount).

As to Ms. Byers, a purported election dated February 22, 2010 was received, but was signed by Mr. Gabriel as "attorney-in-fact". A copy of a general power of attorney was also filed in favor of Mr. Gabriel, and the document appears to not necessarily be compliant with the requirements of 20 Pa. C.S.A. 5601 *et seq*. The general power of attorney is also dated February 22, 2010, and is apparently on the letterhead of attorney William M. Panella of New Castle, PA. But, the Court was previously advised by the Debtor and its counsel that Ms. Byers was represented by attorney Susan Papa.

Given these circumstances, and the fact that the Debtor's administration of this bankruptcy case has troubled the Court as set forth more fully in the Court's prior Memorandum Opinions and Orders [FN 3] the Court requests that the Office of the U.S. Trustee [FN 4] examine the elections filed by the minority shareholders , take whatever investigation it deems appropriate, and submit a report and recommendation to the Court with respect to whether the Court should accept the waivers and/or disclaimers elected by the minority shareholders.

FN 3: <u>See</u> Doc. ## 369, 383, 393, 428.

FN 4: The primary role of the Office of the U.S. Trustee is to serve as the "watchdog over the bankruptcy process." <u>See</u> House Report No. 998, 95th Cong., 2d Sess at 88 (reprinted in 1978 U.S.C.C.A.N. at 5787, 5963, 6049); <u>see also</u> <u>www.justice.gov/ust/eo/ust_org/about_ustp</u> (DOJ website setting forth mission and purpose of the U.S. Trustee Program).

Bankr. Doc. No 545.

The March 10, 2010 report and recommendation filed by counsel from the Office of the

U.S. Trustee recommended that three of the four minority shareholders have the opportunity to

revoke/rescind their previous elections in order to have the opportunity to be paid their full

ratable interest in surplus funds realized by the Appellant. Bankr. Doc. No. 548. The three

minority shareholders subsequently filed elections with the Bankruptcy Court (through the U.S.

Trustee) to receive their pro rata share. *Id*.

On March 19, 2010, Appellant objected to the report and recommendation, and requested

the scheduling of an evidentiary hearing on the report and recommendation. Bankr. Doc. No.

557. On April 13, 2010, the Bankruptcy Court overruled the Appellant's objections and adopted

the recommendation of the U.S. Trustee, and ordered Appellant to remit pro rata shares to the

three minority shareholders who elected to receive them. *See* April 13, 2010, Order of

Bankruptcy Court, at Bankr. Doc. No. 559. Within that order, the Bankruptcy Court

characterized Debtor's March 19, 2010 objection to the report and recommendation as its "sixth

bite at the apple". *Id.* at FN 4. To that end, the Bankruptcy Court noted:

> Specifically, the Court entered an Order dated September 19, 2008, which
> determined that minority shareholders are entitled to be paid a pro rata distribution
> of surplus proceeds. The Debtor moved for reconsideration of that order, and the
> Debtor's motion was denied on November 14, 2008. The Debtor then moved for
> reconsideration of the Court's November 14, 2008 order denying the Debtor's motion
> for reconsideration. That motion was denied by order dated December 19, 2008.
> Thereafter, the Debtor filed yet another motion for reconsideration - which the Court
> denied by way of order dated December 31, 2008. The Debtor then lodged an appeal,
> which was denied by the District Court as being untimely. The Debtor then filed its
> Objection, which is the subject of this Memorandum Opinion. See (Dkt. ##'s 360,
> 369, 384, 393, 513 and 544).

*Id*.

On April 27, 2010, Appellant Ceda Mills appealed the April 13, 2010, order of the

Bankruptcy Court. Ceda Mills Doc. No. 1. On June 21, 2010, Appellant Ceda Mills filed its

brief in support of the appeal. Ceda Mills Doc. No. 4. On September 8, 2010, this Court denied

the appeal as untimely. Ceda Mills Doc. No. 5. For his part, Appellant Duffy appealed the April

13, 2010 order on June 11, 2010. Duffy Doc. No. 1. His appeal was also dismissed as untimely

on September 8, 2010. Duffy Doc. No. 2. Both appeals are back before the Court following

remand by the Court of Appeals for the Third Circuit.

**Analysis**

On appeal from an order of the Bankruptcy Court, the district court must apply the clearly erroneous test to factual findings and de novo review to questions of law.

After a review of the record, and careful consideration of the memoranda presented by the parties on appeal, this Court finds that the Bankruptcy Court did not err with regard to the applicable questions of law.

As noted herein, both Appellant Ceda Mills and Appellant Duffy raise two challenges to the April 13, 2010 Order of the Bankruptcy Court, one challenging the jurisdiction over the dispute, and the other concerns the question of whether Appellant was entitled to a hearing prior to the Bankruptcy Court's adoption of the report and recommendation from the Office of the U.S. Trustee.  Appellant Duffy raises an additional issue with regarding whether the Bankruptcy Court exceeded its authority "in compelling the Debtor to engage in a dissolution" when it granted the Ceda Mills' own motion to sell substantially all of its property following a hearing on the matter in July 2006.  The Court will address Appellants' arguments *ad seriatim*.  At the outset, however, the Court notes that the factual record of what transpired over the course of the bankruptcy is not in dispute.  What is in dispute are legal conclusions reached by the Bankruptcy Court in the course of issuing orders to the Appellants.  The Bankruptcy Court made findings in term of inequitable conduct by Appellants and sufficiency of notices provided to the equity holders.  Appellants do not dispute the facts underpinning the conclusions, but the ultimate conclusions themselves.

A.     Subject Matter Jurisdiction

According to Appellant Ceda Mills, "the Bankruptcy Court lacks jurisdiction over the

18

relations of a post-confirmation Debtor corporation and its shareholders in matters unrelated to and following the substantial consummation of said Debtor's Plan, particularly in the absence of any controversy." Ceda Mills Doc. No. 4 at 11. More particularly, Ceda Mills disputes the Bankruptcy Court's subject matter jurisdiction by contending that the Court improperly equated Ceda Mills' shareholders with its creditors, and, by doing so, has extended its jurisdiction into the internal affairs of a post-confirmation debtor "on a matter with no connection to its Plan or the substantial consummation thereof." *Id*. at 13. For the reasons that follow, the Court rejects this argument. On the surface, this simplistic argument seems somewhat logical: a) Bankruptcy Courts are courts of limited jurisdiction; b) the bankruptcy confirmation plan did not *specifically* address the money recovered through the liquidation of the company's assets and the insurance litigation settlement; and, therefore, c) the Bankruptcy Court does not have jurisdiction over the distribution of monies to Appellant's shareholders. Upon review of the entire proceeding in this matter, the Court finds this argument to be entirely devoid of merit.

The source of a bankruptcy court's subject matter jurisdiction is 28 U.S.C. §§ 157 and 1334. *See, e.g., In re Seven Fields Development Corp. (Geruschat v. Ernst & Young)*, 505 F.3d 237, 253 (3d Cir. 2007). In *Geruschat*, the Third Circuit held:

> Section 157 provides for two levels of authority that may be invested in a bankruptcy judge depending upon which of two categories a case or proceeding falls. The two categories are: (1) "all cases under Title 11 and all core proceedings arising under title 11," 28 U.S.C. §157(b)(1) (collectively known as "core proceedings"), and (2) a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," 28 U.S.C. §157(c)(1) ("non-core proceedings").

*Geruschat*, 505 F.3d at 254.

A bankruptcy judge may hear a non-core proceeding when that matter otherwise relates to

a case under Title 11; however, in such a proceeding, the bankruptcy judge must submit findings

of fact and conclusions of law to the district court so that the district court can issue a final order

after considering those findings and conclusions and reviewing, de novo, those legal conclusions

to which a party has timely and specifically objected.   28 U.S.C.A. §157(c)(1).

This was not the first occasion upon which Appellant Ceda Mills has raised this

argument.  The Bankruptcy Court addressed this very same argument with its orders on

September 19, 2008 (Bankr. Doc. No. 360), November 14, 2008 (Bankr. Doc. No. 369), and

April 13, 2010 (Bankr. Doc. No. 559), and specifically addressed Appellant's premise that the

dealings of Duffy, as the president of Ceda Mills, essentially paying himself and his wife from

the insurance proceeds without providing a pro rata share to the other shareholders.  Throughout

the course of addressing Appellant's challenges to its Orders regarding the Ceda Mills

shareholders, the Bankruptcy Court has articulated three bases for jurisdiction.  In his November

14, 2008 decision, Judge Deller began his discussion by noting that the matter was a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)("matters concerning the administration of the

estate"); 28 U.S.C § 157(b)(2)(B)("allowance and disallowance of claims ..."); 28 U.S.C. §

157(b)(2)(L) ("confirmation of plans"); and 28 U.S.C. § 157(b)(2)(O)("other proceedings

affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the

equity security holder relationship...").  Further, the Bankruptcy Court noted that jurisdiction

exists pursuant to 28 U.S.C. § 1334(b) as a matter that both "arises in" and is "related to"

Appellant's bankruptcy case, specifically that the matter arises in the bankruptcy case because it

relates to the enforcement of orders entered by the Court, including that Court's order approving

a global settlement agreement between Appellant and its various insurers and the Court's

confirmation of the Amended Chapter 11 Plan.  More particularly, the Bankruptcy Court found

that the cash proceeds realized from the liquidation of the company, including the proceeds from

the insurance settlements, are the very assets that funded the Amended Plan.  As such, its

jurisdiction as to the distribution to the shareholders rests upon both the disposition of assets

dedicated to effectuation of the plan, and the manner and method by which the Amended Plan is

implemented and executed.  Bankr. Doc. No. 369.

In its April 13, 2010 Order, the Bankruptcy Court noted its previous determination

regarding subject matter jurisdiction, and further noted the application of res judicata to

jurisdictional determinations preclude a collateral attack on the matter by way of a subsequent

challenge.  *See* Bankr. Doc. No. 559 (citing *Chicot County Drainage Dist. v. Baxter State Bank*,

308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (a party that had an opportunity to litigate the

question of subject-matter jurisdiction may not reopen that question in a collateral attack upon an

adverse judgment)).  Neither Appellant addresses this argument in their respective appeals.

Taken as a whole, the Court has no difficulty whatsoever in determining that the

Bankruptcy Court properly exercised jurisdiction in its orders regarding pro rata distributions to

minority shareholders.  The appeal challenges a matter that are well within the realm of the

administration of the estate, and the Amended Plan itself included a provision regarding the

liquidation that subsequently occurred, both realities of which fall squarely within the jurisdiction

of the Court as a core proceeding.  *See* 28 U.S.C. §§ 157(b)(2)(A) & (b)(2)(O).  To argue

otherwise at this juncture simply overlooks the controlling authority in law, the factual

developments in the record, and the tenets of res judicata.

B.    Rescission of Agreements with Minority Shareholders without a Hearing

Appellant Ceda Mills complains that the Bankruptcy Court's orders which permitted the

minority shareholders to be paid their pro rata interest in surplus funds is inconsistent with state

corporate law.  Ceda Mills Doc. No. 4.  To that end, Appellant Ceda Mills contends that it is

improper for the Bankruptcy Court "to ignore the substantive rights of the Debtor under State

Law to enforce a contract with its shareholders, or to rely on the binding nature of agreements

proper on their face."  Ceda Mills Doc. No. 4.

The Bankruptcy Court considered this argument previously, and has twice rejected it.

More specifically, on November 14, 2008, the Bankruptcy Court held:

> ... [A]pplicable corporate law provides that all shareholders are entitled to equal
> treatment, and no one shareholder should be permitted to obtain an advantage over
> others occupying the same relationship absent the express consent of the affected
> shareholders.  *Griffith v. Daylight Savings Bldg. & Loan Ass'n*, 16 A.2d 685, 686
> (Pa. Super. 1940)(citing *Sharp's v. Homer Bldg. & Lain Ass'n*, 170 A. 353 (Pa.
> Super. 1934); *Rosenblatt et al. v. Potential Bldg. & Loan Ass'n*, 169 A. 24 (Pa.
> Super. 1933); *Stone v. New Schiller Bldg. Loan Ass'n*, 153 A. 758 (Pa. 1931)); *see
> also* 15 PA.C.S.A. § 1521(d) and *Donahue v. Rodd Electrotype Company of New
> England, Inc.*, 328 N.E.2d 505 (Mass. 1975).
>
> While ignoring the fact that Ceda Mills' liquidation in bankruptcy should result in
> payment of surplus funds to all shareholders, Ceda Mills and its majority shareholder
> appear to imply that applicable corporate law may permit unilateral payment to Mr.
> Duffy.  However, Ceda Mills and Mr. Duffy ignore the corporate responsibilities that
> are imposed upon them if they would like to treat Mr. Duffy as a preferred
> shareholder vis-a-vis the minority shareholders.
>
> If Ceda Mills would like to have Mr. Duffy re-classified as a preferred shareholder
> and receive a distribution preference ahead of the minority shareholders, a manner
> in which Ceda Mills may do this under applicable non-bankruptcy law is through the
> adoption of a plan for special treatment.  *See* 15 Pa.C.S.A. § 1906.  Corporate law
> requires that any such plan for special treatment must be approved by the
> shareholders upon adequate disclosure.  Ceda Mills, however, ignored this process
> and Mr. Duffy unilaterally caused Ceda Mills to remit substantial payments to his
> own benefit.  Had Ceda Mills followed the special treatment process, shareholders

would have been entitled to "dissenters' rights," which includes the right of the dissenting shareholder to sell his or her shares back to the corporation in exchange for their fair value (which in this case is the pro rata amount of (a) the surplus funds, and (b) any net recovery that may be obtained at Adv. No. 05-2929-JAD). *See id.* at §§ 1906 and 1571 *et seq.*; *see also* 13 Summ. Pa. Jur. 2d Business Relationships § 10:5 (2008).

The form Motion for Report and Account restores the shareholders to the position they would have occupied had Ceda Mills and Mr. Duffy adequately protected the interests of the minority shareholders and followed appropriate procedures.  In this regard, the form Motion for Report and Account provides alternatives to the minority shareholders (i.e., consent to keeping their investment with Ceda Mills with Mr. Duffy having paid himself, or alternatively redeeming shares in exchange for their pro rata payment).  Naturally, in connection with such provisions, the form Motion for Report and Account also requires that Ceda Mills appropriately disclose the value of the minority interests in the surplus funds, and it appropriately recognizes Mr. Duffy's ... beneficial interest [as majority shareholder] in the ... surplus funds.

Bank. Doc. No. 369 at pp. 66-68.

Appellant Ceda Mills' argument rests in large part upon the notion that the former elections by minority shareholders to receive an amount equivalent to their original investment were proper.  The Bankruptcy Court not only disagreed with Appellant's characterization, but made factual findings in this regard.

In rejecting Appellant Ceda Mills' argument that the elections by the minority shareholders to receive no more than a return of their original investment were legitimate, the Bankruptcy Court analyzed the original notices provided to the shareholders, a copy of which was filed at Bankr. Doc. No. 348, and found them to be both misleading and incomplete.  Those notices suggested that the minority shareholders could request the return of the amount of their investment, an aggregate amount of $170,000.00.  The Bankruptcy Court found such notice to be misleading in that the minority shareholders were not provided with details regarding the fact that they were entitled to receive much more than their original investment.  At the time, the record

indicated that the estate had recovered at least $15,106,191.42 plus interest.  *See, e.g.,* Doc. No.

1, First Report and Account filed by Ceda Mills dated Nov. 19, 2009, also filed at Bankr. Doc.

No. 537.  Using round numbers, the Bankruptcy Court found that approximately $9.325 million

dollars of these funds were used to pay: (a) attorneys fees (under $4.8 million), and (b) creditors

(approximately $3.525 million.)  *See* Bankr. Doc. No. 369 at FN 26 (references omitted).  Given

those distributions, at least $5,781,191.42 was available for equity holders at the time.  The

minority shareholders owned seventeen percent (17%) of Ceda Mills, which translated into an

entitlement of at least $982,802.55 of the proceeds.  Even if all of the creditors on Appendix A

came forward and demanded payment, the net surplus would have conceivably been reduced by

$558,808.15, resulting in a surplus of $5,222,383.27.  Under this scenario, the aggregate value of

the minority shareholder interests was $887, 805.15.  And yet, the Bankruptcy Court found that

the notices prepared by Appellant Ceda Mills did nothing but obfuscate the fact that Debtor had

realized more than $5.7 million dollars of surplus funds in excess of creditor claims.  *Id*. at p. 49.

The notices further erroneously suggested that Ceda Mills only had "some cash" and also had a

"net loss to date" of $3,771,280.86.  *See* Proposed Notices to Shareholders, Bankr. Doc. No. 348.

The Bankruptcy Court found such representations to be misleading.  The notices made no

indication regarding how much each minority shareholder was entitled to receive, nor did it

indicate when they could expect to receive any payment.

    As a result of it's determination that the notices were both inaccurate and misleading, the

Bankruptcy Court rejected the election notices advanced by Appellant Ceda Mills with its orders

from September and November 2008.  As noted, *infra.*, Appellant Ceda Mills unsuccessfully

moved for reconsideration of those orders (September 29, 2008, and December 15, 2008,

respectively), and subsequently appealed the issue to this Court on February 19, 2009, at

Civ.A.No. 2:09-cv-181.  That appeal was dismissed on September 4, 2009.  On October 19,

2009, the Bankruptcy Court ordered Appellant to comply with the Order dated September 19,

2008, and file a report and accounting with an application to pay proposed distribution and/or

redemption to equity holders.  Bankr. Doc. No. 528.  On November 19, 2009, that report and

account was filed by Appellant Ceda Mills.  Bankr. Doc. No. 537.  A hearing was conducted

regarding that report and account on February 2, 2010, and the matter was taken under

advisement.  Bankr. Doc. No. 542.  The Bankruptcy Court further ordered that the shareholder

elections were to be filed by February 9, 2010.  *Id*.  Shortly thereafter, Appellant Ceda Mills

filed executed shareholder agreements from the minority shareholders.  The notices provided by

Appellant to the minority shareholders and subsequently filed with the Bankruptcy Court

included the following language:

NOTICE OF SHAREHOLDER ELECTION

 I, _____, acknowledge receipt and review of the First
Report and Account filed by Ceda Mills, Inc.  Combined with Application for Order
Approving Proposed Distribution and/or Redemption to Electing Equity Holders,
attached as Exhibit B to the Order of the Honorable Jeffrey A. Deller dated
September 19, 2009. Pursuant to Paragraph 9 of the foregoing, I,
_____, hereby give written notice to Ceda Mills, Inc., and the
Bankruptcy Court of my election <u>not</u> to redeem my equity interest in Ceda Mills, Inc.
For the amounts set forth in Paragraph 8, *or for any sum in excess of my initial
capital investment*.

Date:  _____

_____ Shareholder

*See* Ceda Mills Doc. No. 4; *see also*, Bankr. Doc. No. 544.  On February 26, 2010, the

Bankruptcy Court ordered the following:

25

In this bankruptcy case, the remaining parties to receive distributions are the shareholders of the Debtor. The Court reaches this conclusion because the Court previously ordered the Debtor to pay all creditors in full, and the Debtor, its principal and its counsel has represented to the Court that all creditors have been paid in full the amount of such creditors asserted claims.

With respect to shareholders, this Court has previously ordered that the Debtor remit to shareholders their respective pro rata share of funds realized (and to be realized) in this case. The Debtor's principal and counsel for the Debtor have represented to the Court that equity holders have agreed to forego the return on their equity interests, and have agreed to receive a distribution solely in the amount of such shareholders' investment into the Debtor.

While such a decision by such electing shareholders to forego a pro rata distribution of surplus funds does not appear to make any economic sense, the Court previously ordered that the Debtor provide the shareholders with (a) full disclosure of the solvent state of the bankruptcy estate, (b) notice to each shareholders of their respective right to be paid pro rata from the surplus, and (c) provide shareholders with the opportunity to waive their right to be paid sums in excess of their initial investment.

In fact, the Court first ordered the Debtor to provide the shareholders with notice and an opportunity to make an election concerning their shares back on September 19, 2008. (*See* Doc. No. 360). Since that time, the Debtor has filed numerous pleadings delaying the filing of such a report as ordered by the Court. (footnote omitted) This Court again ordered the Debtor to comply with its Order of September 19, 2008 requiring the filing of a Final Report and Account most recently on October 19, 2009. (*See* Doc. No. 528). A Final Report and Account was finally filed by the Debtor on November 19, 2009.

At the hearing on the First Report and Account on February 2, 2010, the Debtor (through counsel) provided the Court with notarized forms executed by minority shareholders Michael Siegal and Robert Bruce whereby such shareholders agreed to not redeem their shares for any such shareholders agreed to not redeem their shares for any sum in excess of their capital investment. At that time, the Debtor did not submit an election by minority shareholders Albert Gabriel and Rose Byers. FN2. Debtor requested an additional week to file the remaining elections. On February 9, 2010, the Debtor then requested until February 23, 2010 to submit the elections of Mr. Gabriel and Ms. Byers.

FN 2: The Debtor alleges that it previously submitted waiver elections by Ms. Byers and Mr. Gabriel, but the Court did not find them to be binding because the Debtor had not made adequate and/or accurate disclosures to the minority shareholders

26

before such parties elected to waive their rights to a pro rata distribution.

On or about February 23, 2010, the Debtor (through counsel) filed purported elections by Mr. Gabriel requesting the same treatment as elected by Mssrs. Siegel and Bruce (i.e., electing only to be paid the amount of his capital investment and not a full pro rata amount).

As to Ms. Byers, a purported election dated February 22, 2010 was received, but was signed by Mr. Gabriel as "attorney in fact."  A copy of a general power of attorney was also filed in favor of Mr. Gabriel, and the document appears to not necessarily be compliant with the requirements of 20 Pa.C.S.A. 5601 *et seq*.  The general power of attorney is also dated February 22, 2010, and is apparently on the letterhead of attorney William M. Panella of New Castle, PA.  But, the Court was previously advised by the Debtor and its counsel that Ms. Byers was represented by attorney Susan Papa.

Bankr. Doc. No. 545.  In view of these circumstances, as well as the concerns the Bankruptcy Court had with respect to Appellant Ceda Mills' previous administration of the bankruptcy, the Office of the US Trustee was ordered to examine the purported elections filed by Appellant Ceda Mills, take whatever investigation it deems appropriate, and to submit a report and recommendation to the Bankruptcy Court regarding whether the waivers and/or disclaimers elected by the minority shareholders should be accepted.  *Id*.

The Report and Recommendation filed by the Office of the U.S. Trustee on March 10, 2010, reported the following:

Based upon my communication with the minority shareholders, the following is reported:

1.     I have been advised by Counsel for minority shareholders Mr. Albert Gabriel and Mrs. Rose Byers that both parties with to revoke their elections and receive the full amount to which they are entitled.

2.     I have been advised by Mr. Michael Siegal that his election was premised upon his review of the documents and conclusion that the Amount of Proposed Distribution on Account of Equity contained in the First Report and Account filed by Ceda Mills, Inc. Combined with Application for Order

27

Approving Proposed Distribution and/or Redemption to Electing Equity Holders dated November 19, 2009 would be significantly eroded (by half) as a result of ongoing legal fees.  He has further advised, however, that if the full amount is still available for distribution to him, he wishes to rescind his election.

3.     I have been advised by Mr. Robert Bruce that he is aware of the full amount which he is entitled to receive, as identified in the First Report and Account Filed by Ceda Mills, Inc., and has agreed to settle for the sum of his original investment.

Bankr. Doc. No, 548.   On March 12, 2010, the Bankruptcy Court ordered Ceda Mills and/or

Duffy to file its opposition to the Report and Recommendation within seven days, and further

ordered that the minority shareholders notify the Court in writing of their respective decisions to

participate in a full pro rata distribution of the surplus funds.  Bankr. Doc. 550.  Minority

shareholders Siegal, Gabriel, and Byers subsequently did so, and each filed their desire to

participate in a full pro rata distribution in writing.  Bankr. Doc. Nos. 553 &556.

In its April 13, 2010, Opinion, the Bankruptcy Court reaffirmed its previous rejection of

the argument of Appellant Ceda Mills that permitting the minority shareholders to be paid their

beneficial interest in surplus funds is inconsistent with state corporate law (as noted *infra*).

Bankr. Doc. 559 at pp. 29 - 31 (restating the findings and conclusions from Bank. Doc. No. 369

at pp. 66-68).  The Bankruptcy Court further noted:

Throughout these proceedings, the Debtor was very coy with respect to notices and disclosures to shareholders, including statements as to the rights, title and interests of minority shareholders.  The problems associated with each of the notices proposed by the Debtor are spelled out in *Memorandum Opinion and Order dated 11/14/2008 Denying Motion for Reconsideration* (Dkt. # 369) at pp. 48-55; *Order Signed 12/19/2008 Denying Motion of the Debtor, Ceda Mills, Inc., Pursuant to F.R.Civ.P. 60(b)(5), (6) for Relief From the Court's Order of November 14, 2008 and to Deem Claims of Equity Security Holders Satisfied* (Dkt. #384) at pp. 1-5; *Order Denying Motion of the Debtor, Ceda Mills, Inc. To Reconsider Order Dated December 19, 2008* (Dkt. # 393) at pp. 3-12.  Interestingly, while the Debtor opposed making pro

> rata distributions, one notice proposed by the Debtor stated, among the things in it,
> that, "Your right to redeem your investment ... is subject to [certain corporate
> documents]. These [rights] may include, *inter alia*, ... the pro rata distribution of
> your shareholder equity interest ... ." *See* Objection at p. 20. But, again, the Debtor
> and its principal always opposed remitting minority shareholders anything in excess
> of the amount of such shareholders' initial investment.

Bankr. Doc. No. 559 at FN 20.

In terms of the pending appeal of both Appellants, the Court agrees with the Bankruptcy

Court's acceptance of the elections by three of the four minority shareholders to receive their pro

rata share. Appellant Ceda Mills was under a clear obligation to its shareholders, and not just the

majority shareholder, to properly and adequately notify all equity holders of the developments

within the liquidating Chapter 11 bankruptcy. Following a Rule to Show Cause, Appellant Ceda

Mills was given very specific guidance in terms of what was expected, guidance which it chose

to ignore. The Bankruptcy Court noted that during the time in which majority shareholder Duffy

caused funds to be paid to, and for the benefit of, himself and his family members, the minority

shareholders had received no payment whatsoever. It was not until after the Bankruptcy Court

issued its opinions and orders in the bankruptcy case that Appellant remitted to minority

shareholders an amount of funds limited to the amount of the minority shareholders' investment

in Ceda Mills. Specifically, Appellant remitted: $100,000.00 to Mr. Michael Siegal, when his

pro rata share of funds on hand equaled at least $443,919.00; $10,000.00 to Mr. Albert Gabriel ,

when his pro rata share of funds on hand equaled at least $44,392.00; and $10,000.00 to Ms.

Rose Byers, when her pro rata share of funds on hand equaled at least $44,392.00. *See* Bankr.

Doc. No. 559 at FN 6. The Bankruptcy Court subsequently found that Debtor's proffered form

of notice was deficient due to Debtor's failure to adequately disclose and account for the surplus

available, and it rejected the purported elections of the minority shareholders for only a return of their original investment.  Since then, Appellant Ceda Mills has deliberately attempted to avoid its obligations to the minority shareholders by recasting its obfuscation and manipulation of the information regarding the company's financial condition as some kind of outside-of-the-bankruptcy process agreement with the shareholders.  There is no genuine dispute that the Bankruptcy Court has previously found, and ordered, that Ceda Mills is required to provide minority shareholders with pro rata distributions.  Neither Appellant offers any argument at this juncture beyond what has previously been offered, considered, and rejected.

Furthermore, Appellants' appeal the April 13, 2010, Order on the basis that the Bankruptcy Court denied the request for an evidentiary hearing following the report and recommendation and the subsequently filed written elections by three of the four minority shareholders to receive their full pro rata share of the surplus funds.  The Bankruptcy Court determined that an adequate record existed upon which it could base its decision.  Bankr. Doc. No. 559 at p. 34.   The Court agrees with the Bankruptcy Court that no hearing was necessary. "Where a matter has already been adequately argued before the bankruptcy judge, and the judge determines that no further hearings are necessary, then the debtor's due process rights are not violated when the judge decides the issue without further hearings."  *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 727–28 (5th Cir.1991); *see In re Lease–A–Fleet*, 1995 WL 743666, *5–*6, 1995 U.S. Dist. LEXIS 18607, *17–19 (E.D.Pa.1995) (holding that, where the court has an adequate factual record before it, an evidentiary hearing is unnecessary); *In re Harischfeger Industries, Inc.*, 316 B.R. 616, 619-621 (Bankr. D. Del. 2003)(same).

In this case, Appellant Ceda Mills previously was afforded five hearings (July 22, 2008,

August 29, 2008, September 5, 2008, October 21, 2008, and February 2, 2010) during which it presented little in the way of evidence aside from unsworn testimony of Appellant Duffy, draft proposals for notice to the shareholders (which were also attached to Debtor's written filings), and argument by counsel.  Considering the arguments that were raised in its objection to the report and recommendation, apparently Appellant Ceda Mills wants an evidentiary hearing to merely reiterate what is already contained in its briefs and the record already before the Bankruptcy Court.

Upon review of the Bankruptcy Court's determinations in this regard, the Court finds that no factual determination was clearly erroneous, and further finds and concurs with the legal determinations.  Appellants' appeal as to the rescission of the agreements advanced by Debtor will be denied.

C.      Whether the Bankruptcy Court Compelled Ceda Mills to Dissolve

Curiously, Appellant Duffy identifies the Bankruptcy Court's granting of Debtor's 2006 motion to sell substantially all of its assets as an issue for appeal.  Bankr. Doc. No. 600.  Given the fact that Appellant Duffy has not filed any brief in support of his appeal, there is little in the record for the Court to consider as a basis for Appellant's argument.  To be fair, current counsel for Appellant Duffy entered this proceeding at a point after several years of litigation.  Further, counsel for Appellant Duffy was not involved in 2006 when Debtor's liquidation occurred.  To that end, the Court refers Appellant Duffy to the Opinion and Order of the Bankruptcy Court dated November 14, 2008, Bankr. Doc. No. 369, in the following regard:

> ... The undisputed record is that while insurance litigation resulted in a very sizable recovery, the litigation was not successful in that it did not lead to the resumption of operations at Ceda Mills because of delays that are inherent with litigation.

The insurance litigation was hard fought and took over two years to get to trial. While the litigation was pending, the debtor "ran out of gas" and lacked sufficient funds to adequately protect secured interests as required by 11 U.S.C. § 361.  As a result, the liquidation alternative set forth in the Amended Plan was invoked by the debtor prior to trial, and the debtor sold substantially all of its tangible assets before the bankruptcy Court.  *See* Motion to Sell Real and Personal Property (Case No. 04-24452-JAD; Dkt. # 192).

The preceding facts were acknowledged by Ceda Mills at the July 18, 2006 hearing on the sale of its assets.  During the July 18, 2006 sale hearing, the following admission was made:

Court:        The plan was that the debtor would reorganize.  But now it's not reorganizing because this litigation has not been successfully completed.

Counsel:      Correct.

*Audio Recording of Hearing Held on July 18, 2006* (Case No. 04-24452-JAD) at 10:14-10:16.  In response to further inquiry from the Court, Ceda Mills further acknowledged as follows:

Counsel:      ... various parties approached him [Mr. Duffy] and this one ultimately executed an agreement when it became evident we didn't have the funds to revitalize the plant.

*Id*.  In addition, counsel for the debtor engaged in this colloquy with the Court:

Court:        I don't think that's what we were talking about when that plan was confirmed.  It sounded to me like this debtor wanted to reorganize, he'd be running this business and he'd turn it over to his great grandchildren.

Counsel:      That was the intent, yes.   But we also suggested that if we couldn't do that, there would be a liquidation.  This was, uh, not coerced but it became evident that it was the only course after this time went on and we've had a lot of rancor with Capital Crossing Bank, we're hoping that's resolved.  The litigation has been very intense.  Parties are very wary about investing new monies into this thing under all those circumstances.  And as time went on, it became evident that we should make sure this thing doesn't waste.

*Audio Recording of Hearing Held July 18, 2006* (Case No. 04-24452-JAD) at 10:34-

10:35.

> While it is true that the Amended Plan states that "The Debtor believes that ongoing operations will be sufficient to fund the Debtor's Plan," the Amended Plan also states unequivocally that "[f]unding of this Plan will be derived from insurance proceeds and from the ongoing business operations of the Debtor. *See* Amended Plan (Case No. 04-24452-JAD; Dkt. # 115) at p. 7. Again, there is no ongoing business operations because Ceda Mills elected to liquidate its property, plant and equipment. Indeed, at no time during this Chapter 11 have there been any material ongoing business operations at Ceda Mills, because the company was effectively out of business since the commencement of this bankruptcy case.

Bankr. Doc. No. 369 at pp. 22-25. There is nothing in the record to controvert this description of what transpired. In view of the foregoing, the Court easily finds that Appellant Duffy's suggestion that the Bankruptcy Court somehow compelled Ceda Mills to liquidate is utterly devoid of merit.

### Conclusion

After a review of the record, and careful consideration of the memoranda presented by the parties on appeal, and the applicable statutory and case law, the Court finds and rules that the April 13, 2010 Order of the Bankruptcy Court was proper. The appeals of Appellant Ceda Mills, filed at Civ.A.No. 2:10-cv-599, and of Appellant Chester Duffy, filed at Civ.A.No. 2:10-cv-796 will be dismissed. An appropriate order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CEDA MILLS, INC.,** | ) |
|         **Appellant,** | ) |
| | )  **2:10-cv-599** |
|         v | ) |
| | ) |
| **CHET DUFFY, MICHAEL SIEGEL, ROBERT** | ) |
| **BRUCE, ALBERT GABRIEL, and ROSE** | ) |
| **BYERS,** | ) |
|         **Appellees.** | ) |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| **CHET DUFFY,** | ) |
|         **Appellant,** | ) |
| | ) |
|         v | )  **2:10-cv-796** |
| | ) |
| **CEDA MILLS, INC., MICHAEL SIEGEL,** | ) |
| **ROBERT BRUCE, ALBERT GABRIEL,  ROSE** | ) |
| **BYERS and  THE OFFICE OF THE U.S.** | ) |
| **TRUSTEE,** | ) |
|         **Appellees.** | ) |

## ORDER OF COURT

AND NOW, this 29th day of March, 2012, for the reasons set forth in the Memorandum

Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the appeals of Ceda

Mills, Inc., filed at Civil Action number 2:10-cv-599, and Chet Duffy, filed at Civil Action

number 2:10-cv-796, are **DISMISSED WITH PREJUDICE**.

The Clerk shall docket these actions as closed.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

34

cc:    Elsie R. Lampl, Esquire
       Email: elampl@lampllaw.com
       John P. Lacher, Esquire
       Email: rol@lampllaw.com
       Robert O. Lampl, Esquire
       Email: rol@lampllaw.com
       Haig M. Sakoian
       Email:  Email: hsakoian@bglaw-llp.com